Matter of the Estate of JOSEPH J. RYAN, Deceased.

(Surrogate's Court, New York County, May, 1921.)

Executors and administrators — contested probate — rights of temporary administrator — when discovery proceedings will not cover personal letters.

While prior to the issuance of letters the one named in a will as executor may have certain dominion and custody over the property of a decedent, his rights are subordinate to those of the temporary administrator, in the event of a contested probate.

Discovery proceedings may not be used for the purpose of seeking evidence to be used in another proceeding.

A temporary administrator as an incident of his duty to take into possession the assets of the estate, should, pending a contest of the will, take possession of such documents as bear upon the financial affairs of the deceased, books of account and other similar papers, and in a discovery proceeding an order directing delivery to him of such documents will be granted.

Such an order, however, will not be made to cover letters written by the residuary legatee to the deceased; if they constitute material and competent evidence the Code of Civil Procedure provides ample methods for their production for use upon the trial.

DISCOVERY proceeding.

Charles A. Curtin, temporary administrator.

John J. Robinson, for Dorothy L. Whiteford.

Joseph A. Fagnant, for executor.

Richard H. Clarke, for widow.

Outerbridge Horsey, special guardian.

FOLEY, S. In this discovery proceeding, brought by the temporary administrator, respondent is directed

to deliver, in addition to the property already turned over, all papers relating to the financial affairs of the deceased, and all other documents, with the exception of letters written by the residuary legatee to the deceased. The former class of papers should properly be in the possession of the temporary administrator, rather than the person named as executor in the will. While the latter appears to have certain dominion and custody over the property of a decedent prior to the issuance of letters (Jessup-Redfield, 563; 2 Williams Exrs. [7th Am. ed.] 116; Toller Exrs. [4th Am. ed.] 153), his rights are subordinate to those of the temporary administrator appointed in the contested probate proceeding.

The nature of discovery proceedings, the functions and duties of a temporary administrator and the property right of the sender in personal letters require that they should remain where they are.

(1) Discovery proceedings can only be brought to obtain the delivery of specific personal property, or to acquire knowledge or information with regard to its possession. They cannot be used for the purpose of seeking evidence to be used in other proceedings. *Matter of Heinze,* 224 N. Y. 1; *Matter of Kingsley,* 111 Misc. Rep. 528; *Matter of Denham,* N. Y. L. J. June 23, 1917; affd., 180 App. Div. 935; *Matter of Appel,* N. Y. L. J. April 2, 1921.

(2) The powers of a temporary administrator are limited by statute and are to be exercised primarily for the preservation of the estate pending the contest. It is his duty to take into possession the assets (Code Civ. Pro., § 2597) to secure and preserve them. Incidentally to aid him in his duties he should take possession of such documents as bear upon the financial affairs of the deceased, books of account and other similar papers. Section 2768 of the Code of Civil

Procedure, subdivision 3, defines the word '' assets '' as '' personal property applicable to the payment of the debts of a decedent.'' In *Eyre* v. *Higbie,* 35 Barb. 502, it was held that private letters are not estate assets. The question at issue in that case was whether the plaintiff, who asserted right to the possession of certain letters written by George Washington to his military secretary, Colonel Lear, by an assignment from the latter's administrator, could prevail against the defendant, who had received the letters over forty years before from the widow of Colonel Lear. The opinion of Mullin, J., states in this case at page 507: '' It would be a disgrace to the age in which we live, and to the government whose laws we administer, if the letters from a testator's or intestate's wife or child could be made the subject of sale at auction, and the peace of families, the character of individuals, the secrets of governments published to the world, in order that a few pence might be realized in order to pay a debt or legacy. Such things, I trust, cannot be done. In no imaginable contingency can I be induced to give my sanction to such a monstrous doctrine.'' Nothing can be added to the vigor of that language and the soundness of the reasoning. A sale would be an encouragement to persons not interested in the good name of deceased, or his relations, to purchase correspondence for purposes of publication. The alternative is equally disgraceful, for the family might be compelled to bid large sums to retain possession against persons seeking to purchase them.

(3) The property right of the sender in a letter is well recognized and publication may be prevented by injunction. *Gee* v. *Pritchard,* 2 Swanst. 402; *Abernathy* v. *Hutchinson,* 3 L. J. Ch. 209; *Prince Albert* v. *Strange,* 1 Macn. & G. 25; 2 De G. & S. 652, cited with approval in *Roberson* v. *Rochester Fold-*

Misc.]    Surrogate's Court, New York County, May, 1921.

*ing Box Co.,* 171 N. Y. 538; Ingpen Exrs. (2d ed.) 318; *Thomson* v. *Stanhope,* Amb. 737; *Brandreth* v. *Lance,* 8 Paige, 24; *Macmillan & Co.* v. *Dent,* L. R. 1 Ch. Div. (1906) 101; *Philip* v. *Pennell,* L. R. 2 Ch. Div. (1907) 577. The delivery of these letters to the temporary administrator is in substance a publication. Caution requires, in order to prevent any disclosure of their contents, that they remain where they are now under the control of the writer.

Story in his Equity Jurisprudence (Vol. 2 [14th ed.] 625, 627) says: "In a moral view the publication of such letters, * * * is perhaps one of the most odious breaches of private confidence, of social duty, and of honorable feelings, which can well be imagined. It strikes at the root of all that free and mutual interchange of advice, opinions, and sentiments between relatives and friends and correspondents which is so essential to the well-being of society and to the spirit of a liberal courtesy and refinement. It may involve whole families in great distress, from the public display of facts and circumstances which were reposed in the bosoms of others under the deepest and most affecting confidence that they should forever remain inviolable secrets. * * * it by no means follows that private persons have a right to make such publications on other occasions, upon their own notion of taking the administration of justice into their own hands, or for the purpose of vindicating their own conduct, or of gratifying their own enmity, or of indulging a gross and diseased public curiosity by the circulation of private anecdotes or family secrets or personal concerns."

If these letters constitute material and competent evidence, the Code provides ample methods for their production for use upon the trial.

Decreed accordingly.